MOUNTAINBROOK HOMEOWNERS ASSOCIATION, INC., a non-profit North Carolina Corporation; William Pfeiffer and wife, Leigh Pfeiffer; Herbert Moore and wife, Loretta Moore; Walter W. Rule, Jr., and wife, Nancy Rule; and Charles A. Martin, Senior Warden, St. Luke's Episcopal Church and Dan Wall, Junior Warden, St. Luke's Episcopal Church, Plaintiffs,

v.

Brock ADAMS, Secretary of the Department of Transportation of the United States of America; Carl Bowers, Acting Administrator of the Federal Highway Administration; Thomas W. Bradshaw, Jr., Secretary of the North Carolina Department of Transportation; Billy Rose, Highway Administrator, Division of Highways, of the North Carolina Department of Transportation; Earl McEntire, Division Engineer of the 13th Highway Division of the North Carolina Department of Transportation; and H. C. Reed, Jr., Project Engineer, Division of Highways, North Carolina Department of Transportation; Asheville Contracting Company, Inc., a North Carolina Corporation and Baxter H. Taylor, Defendants.

No. A–C–79–106.

United States District Court,
W. D. North Carolina,
Asheville Division.

July 31, 1979.

Long, McClure, Parker, Hunt & Trull, P. A. by Robert B. Long, Jr. and David E. Matney, III, Asheville, N. C., for plaintiffs.

Adams, Hendon & Carson, P. A. by George Ward Hendon, Asheville, N. C., for Asheville Contracting Co. and Baxter H. Taylor.

James B. Richmond, Sp. Deputy Atty. Gen., Raleigh, N. C., for state defendants.

Harold M. Edwards, U. S. Atty., Asheville, N. C., for Federal defendants.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

The Plaintiffs alleged that the Defendants have violated the National Environmental Policy Act, hereinafter referred to as "NEPA", 42 U.S.C.A. Section 4321 et seq., and the rules and regulations promulgated thereunder, brought this action seeking both preliminary and permanent injunctive relief. Specifically, the Plaintiffs allege that the Defendants have failed to comply with the provisions of the Environmental Impact Statement, hereinafter referred to as "EIS" relative to the disposal of the excess or waste rock taken from the Beaucatcher Mountain cut in connection with the construction of Interstate High-

way 240, hereinafter referred to as "I–240" through the City of Asheville, North Carolina. More specifically the Plaintiffs seek the following injunctive relief: (1) a preliminary injunction against Brock Adams, Secretary of the Department of Transportation of the United States and Carl Bowers, Acting Administrator of the Federal Highway Administration, hereinafter referred to as the "Federal Defendants," halting all payments to the State of North Carolina on the Beaucatcher Mountain project until the provisions of the Environmental Impact Statement are fully complied with; (2) a preliminary injunction against Thomas W. Bradshaw, Jr., Secretary of the North Carolina Department of Transportation, Earl McEntire, Division Engineer of the 13th Highway Division of the North Carolina Department of Transportation and H. C. Reed, Jr., Project Engineer, Division of Highways, North Carolina Department of Transportation, hereinafter referred to as the "State Defendants," halting payments to the Asheville Contracting Company, the contractor for the project until the provisions of the Environmental Impact Statement for the project are complied with fully; and (3) a preliminary injunction against the Asheville Contracting Company, and Baxter H. Taylor, hereinafter referred to as the "Private Defendants," stopping the disposal of the waste rock on the lands described in the complaint. The Plaintiffs also seek a permanent mandatory injunction against all Defendants requiring the removal of all waste rock from the lands described in the complaint.

The Plaintiff, Mountainbrook Homeowners Association, Inc. is a non-profit North Carolina corporation whose membership consists of homeowners in the Mountainbrook Subdivision located in Chunns Cove section of the City of Asheville near the highway project in question. The individual Plaintiffs are homeowners in the same subdivision and the St. Luke's Episcopal Church, represented by its Senior and Junior Wardens, owns church property near the highway project.

The primary purpose of the Federal-Aid highway project in question, which has been designated by the State as Project 8.1901410, I–240–1(6)6 and funded by the Federal Highway Administration as its Project F–34–1(6), is to complete the freeway loop system which constitutes the basic framework for the entire Asheville highway network. The project was designed to provide access from Interstate 40 to Asheville's central business district and since this city is located in the heart of the mountains of western North Carolina it was necessary to go around, over or through mountains in order to build the highway. Beaucatcher Mountain which guards the eastern entrance into Asheville like the Rock of Gibraltar guards the entrance into the Mediterranean Sea had to be dealt with and the highway officials were confronted with the problem of going through the mountain with an open cut or tunneling through with a six lane tunnel. The debate raged for more than ten years when both the State and Federal highway officials agreed upon an open cut. Those opposed to a cut through the mountain formed the Beaucatcher Mountain Defense Association and instituted suit in Federal Court contending that the highway officials had failed to comply with "NEPA" and the Federal-Aid Highway Act, 23 U.S.C.A. Section 128 et seq. Specifically the Association contended that the Environmental Impact Statement was inadequate. The Court found the Statement to be adequate and refused injunctive relief and the work continued.

The contract for the cut was awarded to the Asheville Contracting Company and the work is now nearing completion. The cut required the moving of large quantities of rock some of which is being used in the construction of the roadway and the surplus or waste being disposed of by storing it on lots owned or leased by Asheville Contracting Company or Baxter H. Taylor, President and chief stockholder of the contracting company. The Plaintiffs own land adjoining these lots upon which the waste rock has been deposited and they contend that these deposits are unsightly and decrease the value of their property. They specifically contend that the Defendants

have not complied with the "EIS" prepared and filed by the State and Federal highway officials prior to the commencement of the work.

The Defendants deny any wrongdoing and contend that they have complied with the "EIS" and will continue to do so until the project is complete. They move to dismiss for lack of jurisdiction, that the complaint fails to state a cause of action and that the Plaintiffs do not have standing to bring and maintain this action.

The Court heard all motions in Asheville on May 16, 1979 and after consideration of the pleadings, briefs and arguments now enters its findings and conclusions.

Congress declared the National Environmental Policy of this Nation when it enacted in 1970 the National Environmental Policy Act, 42 U.S.C.A. Section 4321 et seq. The declared policy is set forth in Section 4331, as follows:

(a) The Congress, recognizing the profound impact of man's activity on the interrelations of all components of the natural environment, particularly the profound influences of population growth, high-density urbanization, industrial expansion, resources exploitation, and new and expanding technological advances and recognizing further the critical importance of restoring and maintaining environmental quality to the overall welfare and development of man, declares that it is the continuing policy of the Federal Government, in cooperation with State and local governments, and other concerned public and private organizations, to use all practicable means and measures, including financial and technical assistance, in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans.

(b) In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the Federal Government to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may—

(1) fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

(2) assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings;

(3) attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(4) preserve important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice;

(5) achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(6) enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

**Responsibility of each person to contribute to preservation and enhancement of environment**

(c) The Congress recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment.

In Section 4332 the Congress authorized and directed that

". . . all agencies of the Federal Government shall—. . .

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

In compliance with the provisions of this Act the Federal and State Defendants prepared and submitted an environmental impact statement of the proposed open cut, which contained the following language with reference to the disposal of waste rock:

"The contractor will be responsible for obtaining disposal areas for waste and debris. These areas will be continually shaped to contours which are comparable to and blend with the adjacent topography, and temporary erosion control measures and final seeding and mulching of such areas will be exercised to effectively control erosion and siltation."

The Plaintiffs contend that the contractor purchased and/or leased vacant lots near the highway project and adjacent to their property and after removing all vegetation from said lots proceeded to deposit waste rock and debris thereon. They further contend that the mounds of rock on the lots are unsightly and in some places rise to a height of more than one hundred feet; that the mounds are not contoured to blend into the topography of the adjacent lands and in some instances the rock have diverted the flow of the water of Ross Creek. The Plaintiffs further contend that the State Defendants have approved the conduct of the Private Defendants and that the Federal Defendants have done nothing to correct the wrongful conduct of the contractor. The Plaintiffs therefore contend that the Federal Defendants have violated Executive Order No. 11514 issued by the President under the authority of "NEPA"

entitled "Protection and Enhancement of Environmental Quality." The Order, 35 FR 4247 provides in pertinent part as follows:

[T]he heads of Federal agencies shall: (a) Monitor, evaluate and control on a continuing basis their agencies' activities so as to protect and enhance the quality of the environment. Such activities shall include those directed to controlling pollution and enhancing the environment and those designed to accomplish other program objectives which may affect the quality of the environment.

. . . . .

Heads of Agencies shall consult with appropriate Federal, State and local agencies in carrying out their activities as they affect the quality of the environment.

In a Memorandum and Order dated June 4, 1976 this Court approved the "EIS" filed by the Defendants in connection with this project. The Court found that the statement was thorough and proper and that there was an abundance of evidence in the record that the Defendants considered the information acquired from their studies and hearings before reaching their decision to construct the open cut. The Court further found that the Defendants' substantive decision to construct an open cut through the mountain instead of a tunnel was made in good faith, rather than in an arbitrary and capricious manner, and that the decision was within the scope of their authority.

The issues raised by the complaint filed by the Plaintiffs are (1) have the Defendants complied with the "EIS" filed prior to beginning of construction on the project; (2) if not, does the Court have jurisdiction to compel strict compliance with the statement; (3) do the Plaintiffs have standing to bring and maintain the action, and (4) what remedy could the Court order under a statute which provides no remedy.

The Defendants contend that the "EIS" is being complied with and move to dismiss on the grounds that the Court lacks jurisdiction of the subject matter and of the parties, that the Plaintiffs lack standing to

bring and maintain the action and that there is no remedy provided in the statute.

While the only question before the Court now is the Plaintiffs' motion for a preliminary injunction it is necessary to determine the motion to dismiss before reaching the question of injunction.

A careful reading of "NEPA" reveals nothing more than a national environmental policy with directions to the various federal agencies to investigate each project to determine its effect on the environment and to prepare and file an environmental impact statement. No mention is made of any cause of action being conferred upon either a government agency or a private party. The Act provides no private civil remedy. Notwithstanding the failure of the Congress to authorize either a public or private cause of action or to provide a private civil remedy federal courts all over the country have permitted the maintenance of court actions filed by private citizens and parties and have fashioned various remedies which have been enforced by the courts. With the gates open the federal courts have been deluged with a flood of cases and are now called upon to pass upon all controversies arising in connection with every construction project in which there is a dollar of federal money. If there has been any federal legislation on the subject matter Plaintiffs are prone to rush in claiming a federal cause of action and demanding a court imposed remedy even though no cause of action or private remedy is provided by the Congress.

Finally, it appears that the federal courts are coming to grips with this growing problem. In the case of *Touche Ross & Co. v. Redington*, (1979), 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82, Mr. Justice Rehnquist speaking for the Court observed:

"Once again we are called upon to decide whether a private remedy is implicit in a statute not expressly providing one. *During this term alone, we have been asked to undertake this task no less than five times in cases in which we have granted certiorari."* (Emphasis added)

In all of these cases, except one, the Supreme Court refused to read into federal statutes implied private causes of action and private remedies which had not been expressly provided by the Congress. For instance in the *Touche Ross & Co.* case the Court held that there is no implied private cause of action under Section 17(a) of the Securities Exchange Act of 1934. Mr. Justice Rehnquist said:

"In terms, § 17(a) simply requires broker-dealers and others to keep such records and file such reports as the Commission may prescribe. It does not, by its terms, purport to create a private cause of action in favor of anyone. It is true that in the past our cases have held that in certain circumstances a private right of action may be implied in a statute not expressly providing one. But in those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. *E. g., Cannon v. University of Chicago, supra,* (20 U.S.C. § 1681); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, [95 S.Ct. 1716, 44 L.Ed.2d 295] (1975) (42 U.S.C. § 1981); *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, [92 S.Ct. 165, 30 L.Ed.2d 128] (1971) (15 U.S.C. § 78j(b)); *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, [90 S.Ct. 400, 24 L.Ed.2d 386] (1969) (42 U.S.C. § 1982); *Allen v. State Board of Elections,* 393 U.S. 544, [89 S.Ct. 817, 22 L.Ed.2d 1] (1969) (42 U.S.C. § 1973c); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, [88 S.Ct. 2186, 20 L.Ed.2d 1189] (1968) (42 U.S.C. § 1982); *J. I. Case Co. v. Borak,* 377 U.S. 426, [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964) (15 U.S.C. § 78n(a)). By contrast, § 17(a) neither confers rights on private parties nor proscribes any conduct as unlawful."

In the one exception of the five cases to which Mr. Justice Rehnquist makes reference in *Touche Ross & Co., Cannon v. University,* (1979), 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560, the Supreme Court held that a plaintiff may maintain an action under Title IX of the Education Amend-

ments of 1972, despite the absence of any express authorization for it. The Court analyzed the four factors set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and concluded the statute contained an implied cause of action and an implied private remedy.

It should be noted that the Education statute examined in *Cannon* confers certain individual rights not mentioned in "NEPA." It reads in part:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

Cannon alleged she had been denied entrance to medical school because of her sex and that the school obtained federal funds. The only mention of rights in "NEPA" is the declaration by Congress of the general policy to "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings," and that "Congress recognizes that each person should enjoy a healthful environment . . ."

As Mr. Justice Stevens observed in writing the opinion for the majority in *Cannon* (441 U.S. at page 688, 99 S.Ct. at page 1953):

"As our recent cases—particularly *Cort v. Ash*, 422 U.S. 66—demonstrate, the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. Instead, before concluding that Congress intended to make a remedy available to a special class of litigants, a court must carefully analyze the four factors that *Cort* identifies as indicative of such an intent. Our review of those factors persuades us, however, . . . that petitioner does have a statutory right to pursue her claim that respondents rejected her application on the basis of her sex."

Then Mr. Justice Stevens said (at page 690, 99 S.Ct. at page 1954):

"The language in these statutes—which expressly identifies the class Congress intended to benefit—contrasts sharply with statutory language customarily found in criminal statutes, such as that construed in *Cort, supra*, and other laws enacted for the protection of the general public. There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices."

Before leaving *Cannon* we should not overlook the timely observation and wise admonition of Mr. Justice Powell in his dissent:

"Under Art. III, Congress alone has the responsibility for determining the jurisdiction of the lower federal courts. As the Legislative Branch, Congress also should determine when private parties are to be given causes of action under legislation it adopts. As countless statutes demonstrate, including titles of the Civil Rights Act of 1964, Congress recognizes that the creation of private actions is a legislative function and frequently exercises it. When Congress chooses not to provide a private civil remedy, federal courts should not assume the legislative role of creating such a remedy and thereby enlarge their jurisdiction." (Pages 730 and 731, 99 S.Ct. at page 1975 of Powell's dissent opinion).

The four factors set forth in *Cort, supra*, and reaffirmed in *Cannon, supra*, which must be considered in determining whether a private remedy is implicit in a statute not expressly providing one are as follows:

1. Is the plaintiff one of the special class for whose benefit the statute was enacted?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

4. And finally, is the cause of action one traditionally relegated to state law?

As set forth in *Touche Ross & Co., supra,* and *Cannon, supra,* the existence of a statutory cause of action is one of statutory construction. Such interpretations or construction of a statute must begin with the language of the statute itself. "NEPA" and the Executive Orders involved here require federal agencies to prepare and submit Environmental Impact Statements but the only prohibition contained therein is that no federal project shall be approved and no federal funds expended on such project until such statement is prepared and filed. No explicit federal rights are created in favor of private parties and no express cause of action is provided. There is no mention in the statute of any cause of action being given any party or agency to enforce the provisions of the Act or of the Environmental Impact Statement.

In the recent case of *Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 603 F.2d 1073 (4th Cir. 1979) Judge Russell in a scholarly opinion analyzed the first requirement of *Cort* in the following language:

"The first requirement for establishing an implied right of action on account of a violation of a federal statute, as thus enunciated in *Cort*—what is characterized as the 'threshold test' for such an action, and a test which 'has been central to all implication cases, from the first statutory implication decision in which it [the doctrine] was originally formulated' —is that the plaintiff be a member of a class 'for whose especial benefit the statute was enacted.' '[S]atisfaction of the especial benefit criterion,' [as declared in *Cort*] 'is a *necessary,* but not a sufficient, basis for obtaining an implied remedy.' (Emphasis added) And *Cort* gave a very precise statement of who might qualify and who might not qualify as a statutory beneficiary under this doctrine of a federal implied right of action. To qualify as a statutory beneficiary for whom a pri-vate action may be implied, it is not enough that the plaintiff '[has] a financial stake in the outcome of the case' or '[is] at least an incidental beneficiary' or is 'secondarily benefitted,' or that his protection is a secondary or a 'subsidiary' purpose of the statute. The requirement of *Cort* was specific: the protection and benefit of the party seeking such action must be the 'primary congressional goal' of the statute, or, as another has stated it, 'the plaintiff must be the "primary" beneficiary of the statute.' "

The primary purpose of Congress in enacting "NEPA" was, of course, the protection of the National environment. The language of the statute focuses on planning and requires that all agencies and departments planning and constructing any project take into consideration the effect which such project will have on the environment. Such planning is to benefit the nation as a whole and no rights are conferred upon any particular class. There is no indication of legislative intent to create a remedy in any particular class of citizens. It is not consistent with the underlying purposes of the legislation to imply such a remedy for the kind of action brought by the Plaintiffs here has historically been relegated to state courts. The real problem facing the Plaintiffs is that they do not want a pile of rock on lots in their residential section of the city. The Court can well understand their concern but such matters are for the state and city. The matter of zoning is within the sole province of the City of Asheville and any court action involving such questions must be brought and determined in state court. Whether the Private Defendants, the contractor and owners of the lots, have committed a trespass upon the lands of the Plaintiffs is also a state court matter and, of course, whether there has been a taking of Plaintiffs' lands by the State Defendants, is a matter which must be litigated in state court.

So it appears that the statute here fails the tests of *Cort, supra,* in most if not all of the essential factors. It is difficult to see how any court could read into "NEPA" any

implied private cause of action or implied private remedy. Yet, many federal courts have permitted the maintenance of actions brought by private parties and have fashioned and enforced remedies. It is true that most of these actions have been brought to compel the federal agency involved to comply with "NEPA" by preparing and filing an adequate environmental impact statement, and the courts have enjoined the project until such statement was prepared and filed.

■ This Court has found no case wherein a private party has been permitted to maintain an action for the failure to comply with the provisions of an Environmental Impact Statement. The Plaintiffs have cited no such case supporting their contentions as advanced here. It appears that these Plaintiffs have no cause of action, either express or implied, under "NEPA" to enforce the provisions of the statement and that the complaint must be dismissed for failure to state a cause of action upon which relief can be granted.

The Plaintiffs also allege a violation of the Federal Water Pollution Control Act, 33 U.S.C.A. Section 466 *et seq.* in that the location of Ross Creek has been altered and the flow of the stream has been effected by an excessive runoff of rock particles and siltation from the rock piles. Based on the evidence presented by the parties at the hearing this was a minor problem which was reported to the Corps of Engineers and was forthwith remedied to the Corps' satisfaction. Anyway, the Plaintiffs have made no attempt to bottom their claim under any statute except "NEPA" and at the hearing relied entirely upon the alleged failure of the Defendants to comply with the Environmental Impact Statement.

■ They now move to amend their complaint to allege an additional cause of action to the effect that the dumping of the rock on the lots in question in the way and manner as alleged constitutes a "new major federal action significantly affecting the human environment, and that as such the National Environmental Policy Act, 42 U.S.C.A. Section 4332 *et seq.*, requires the filing of a statement assessing the environmental impact of such project prior to the construction and carrying out of such work." They further allege that no such statement has been filed and they seek both preliminary and permanent injunctive relief. The Court will allow the amendment but it will not suffice to save their action.

First, the facts do not support the Plaintiffs' contentions. As they set forth in their original complaint the "EIS" covered the disposal of waste rock from the cut. It stated that the contractor would acquire property upon which to locate the rock and arrange the disposal of such rock in keeping with the contours of the surrounding areas and seed and landscape the disposal sites. The Defendants say they have complied and that the rock piles will be seeded and landscaped before the job is complete.

The second reason why the amendment will not suffice is that it is not realistic to contend that a separate and independent Environmental Impact Statement is required for each lot or area upon which surplus rock or dirt is placed in a highway construction project. It is common knowledge that such procedure is necessary in such construction and to require a new plan and statement for each site selected for such surplus would not be practical and would impede unnecessarily the progress of road construction. The subject was covered by the original statement and this Court has already approved the plan as being adequate.

■ Assuming *arguendo* that the Plaintiffs have a cause of action and have stated it the Court would be compelled to deny the preliminary injunction. The evidence at the hearing revealed that no more rock would be placed on the lots in question. The state highway engineer testified that the piles of rock were contoured in keeping with the surrounding mountains and that the tops and sides of the piles were to be seeded and landscaped. So what else could the Court do by way of preliminary action except stop the Federal Defendants from paying the money to the state. Such action

would require the issuance of a writ of mandamus and it appears that the Plaintiffs have fallen far short of being entitled to such remedy at this stage. Before a writ of mandamus can issue under 28 U.S.C.A. § 1361 the Plaintiffs must show the following elements: (1) a clear right in the Plaintiffs to the relief sought; (2) a clear duty on the part of the Defendants to do the act in question; and (3) no other adequate remedy available. *Burnett v. Tolson*, 474 F.2d 877 (4th Cir. 1973). It is well settled that a prerequisite for a cause of action under Section 1361 is an allegation that the Federal Defendants owe the Plaintiffs a legal duty which is a specific, plain, ministerial act "devoid of the exercise of judgment or discretion." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). Mandamus only empowers a court to enforce ministerial duties. It therefore appears that the Plaintiffs would not be entitled to a preliminary injunction even if they have a cause of action.

The Plaintiffs really want the rock removed from their residential section of the city but this Court could not grant such relief. If they have a cause of action the only relief a federal court could give would be to force the Defendants to comply with the Environmental Impact Statement. They must go to the city council and state court to obtain zoning regulations and enforcement. They must look to the state courts for relief for any trespass or taking of their lands.

The Court concludes that the Plaintiffs do not have a cause of action, either express or implied, under the provisions of The National Environmental Policy Act, 42 U.S. C.A. Section 4332, *et seq.* to compel strict compliance with the Environmental Impact Statement filed in connection with the federal highway project in question here. The complaint does not state a cause of action upon which relief can be granted under the Environmental Act, or the Federal Water Pollution Control Act, 33 U.S.C.A. Section 466 *et seq.* The action must therefore be dismissed. An order dismissing the action will be entered simultaneously herewith.