CITY OF OAK CREEK, Patricia Holzman, Roland Dittmar, Earl Giefer, Edna Mordja, Lois Arsand, Gail Voss, Dr. Frederick J. Hofmeister, First Baptist Church, Inc., Plaintiffs,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, Milwaukee Metropolitan Sewerage Commission, O.C. White, Vinton W. Bacon, Edwin J. Laszewski, Mary M. Wilkinson, Charles E. Gillett, Ted Fadrow, Kristine Martinsek, Milton Vretanar, James C. Newcomb, James J. Mortier, Francis Wasielewski, Defendants.

Civ. A. No. 83–C–221.

United States District Court, E.D. Wisconsin.

Dec. 14, 1983.

Alan Cutler Weinstein, Milwaukee, Wis., and Patrick Walsh, Thomas, Parsons, Schaefer & Bauman, S.C., Madison, Wis., for plaintiffs.

David S. Branch, Senior Staff Atty., Milwaukee Metropolitan Sewerage Dist., Milwaukee, Wis., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION AND ORDER

REYNOLDS, Chief Judge.

At issue in this case is whether this court may enjoin the Milwaukee Metropolitan Sewerage District ("Sewerage District" or "District") from condemning certain property in the City of Oak Creek for use as a landfill site for solid wastes discharged from the District's two treatment plants. The injunction is sought under 42 U.S.C. § 1983 to forestall a threatened violation of the National Environmental Policy Act

("NEPA"), 42 U.S.C. § 4321 *et seq.*, and a threatened violation of the plaintiffs' constitutional rights. On February 14, 1983, Oak Creek, seven individual owners of the land proposed to be taken, and a church owning property near the proposed landfill site filed suit in this court against the Sewerage District, the Milwaukee Metropolitan Sewerage Commission, and the Commission's eleven members. The plaintiffs seek, *inter alia,* preliminary injunctive relief to restrain the defendants from acquiring the proposed landfill site in Oak Creek and from having the site approved for landfill construction.

On March 7, 1983, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. A hearing was held on the plaintiffs' application for a preliminary injunction and the defendants' motion to dismiss on May 13, 1983. The Court has considered the affidavits on record, the briefs, and the pleadings. Based on the record before the Court, the plaintiffs' motion will be denied and the action dismissed. The following constitutes the findings of fact and conclusions of law which underlie the Court's disposition of this action.

## I. FINDINGS OF FACT

The Sewerage District is a corporate municipal body organized under Wisconsin law for the purpose of planning, constructing, and operating a sewer system in the metropolitan Milwaukee area. Wis.Stat. § 66.88 *et seq.* For the past five years, the Sewerage District has been engaged in a major planning, rehabilitation, and construction program known as the Milwaukee Water Pollution Abatement Program. The planning for many of the elements of this program is required by a stipulated state court order entered on May 25, 1977. *See Sewerage Commission of Milwaukee v. Wisconsin Department of Natural Resources,* Case No. 152–342 (Dane County Cir.Ct.).

As part of this pollution abatement program, the Sewerage District is required to plan and provide for the disposal of solid

wastes generated at the two wastewater treatment plants under its jurisdiction: Jones Island located on Lake Michigan in the City of Milwaukee; and South Shore, also on Lake Michigan, located in the City of Oak Creek, south of Milwaukee. In February 1977, the Sewerage District began designing a comprehensive plan for the management of solid waste. A Total Solids Management Study, completed in June 1978, recommended several solids management methods. Jones Island waste would be used either for agricultural land application or for production of Milorganite, a dry fertilizer. South Shore solids would be landfilled or used for compost.

These early recommendations were superseded in June 1980 by a comprehensive Master Facility Plan. One component of this overall planning document concerned the disposal of solid waste. The solid waste recommendations were set forth in the Solids Management Facility Plan. This plan called for the landfilling of all Jones Island solid waste, approximately 250 dry tons per day, and for an agricultural application of South Shore solids. Using the Solids Management Facility Plan as its guide, the Sewerage District began a search for specific sites for the landfilling and agricultural application of its solids. A site planning study known as the Site Specific Analysis ("SSA") was undertaken. This study ultimately identified a 288 acre tract (site LF–022) in the City of Oak Creek as the preferred site for a dewatered sewage sludge landfill.

During the SSA study period, but following the selection of site LF–022, the Sewerage District staff recommended an amendment to the Solids Management Facility Plan. Under the proposed amendment, Milorganite production would be reinstated for all Jones Island waste, both landfilling and agricultural application methods would be used to dispose of South Shore solids, and pipelines connecting the two treatment plants would be constructed. The amended plan, therefore, envisages landfilling only of South Shore solids and only for four months of each year at a level of 127 dry tons per day. Because this proposed

amendment would change the volume and origin of the sludges to be landfilled, the plaintiffs in this case asked the Sewerage District to review its selection of the Oak Creek landfill site in light of these changes. The Sewerage District refused to do so.

The construction and operation of a landfill site by the Sewerage District is subject to approval by the Wisconsin Department of Natural Resources ("DNR") pursuant to Wis.Stat. § 144.44 and Wis.Admin.Code § NR 180 *et seq.* Under these provisions, construction of a disposal site may not begin until the DNR has approved the Sewerage District's "feasibility report" and "plan of operation." Based upon the feasibility report, the DNR determines whether its approval requires it to prepare an environmental impact statement ("EIS").

The entire Master Facilities Plan, including the Solids Management Facility Plan, was the subject of an environmental impact study by the DNR and the Environmental Protection Agency ("EPA"). In June 1981, these agencies issued a final EIS and the DNR conditionally approved the Master Facilities Plan, including the concept of landfilling solid wastes. The Sewerage District intends to submit for DNR approval its proposed amendment to the Solids Management Facility Plan. If the DNR and EPA determine that the project's proposed change constitutes a "major federal action," then a supplementary EIS will be required.

In addition to the overall project, the Sewerage District's selection of a specific landfill site pursuant to its SSA study also will require an EIS according to the DNR and EPA. Such an EIS would be required before construction on any landfill site could be approved. Each EIS must comply with provisions of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Wisconsin Environmental Policy Act ("WEPA"), Wis.Stat. § 1.11.

On December 16, 1982, the Milwaukee Metropolitan Sewerage Commission adopted two resolutions. The first declared the

acquisition of the Oak Creek landfill site a public necessity for the purposes of further on-site testing and eventual development as a landfill facility. The second resolution authorized the initiation of procedures under state law for the acquisition of the site by condemnation.

The Sewerage District is authorized to acquire property by condemnation by Wis. Stat. § 66.90. The responsibility for establishing the public necessity for any acquisition by condemnation has been delegated to the commissioners, and the process of condemnation is governed by Wis.Stat. § 32.-05. Condemnation under Section 32.05 requires several mandatory steps: a relocation order, an appraisal, a mandatory period of negotiation, and a jurisdictional offer to purchase. An owner wishing to contest the right of the condemnor to condemn the property may file an action in the state circuit court of the county where the property is located. The plaintiffs have filed no such action. By its resolution of December 16, 1982, the Sewerage Commission has completed the first step of this process, the adoption and filing of a relocation order.

The plaintiffs assert two arguments in support of their claim under 42 U.S.C. § 1983: one constitutional and one statutory. The complaint alleges that the defendants adopted the resolution for the condemnation of site LF–022 with knowledge that the factual premises underlying the selection of that site would be rendered invalid by the proposed amendment to the Solids Management Facility Plan which the defendants themselves have submitted for DNR approval. That amendment substantially reduces the amounts of sludge to be landfilled and changes the location from which that sludge would originate. The previous facts, originally contained in the solids management plan, provided the underpinnings for the selection of the Oak Creek landfill site pursuant to the SSA study. The complaint thus asserts that in light of these factual changes, the Sewerage Commission's decision to acquire site LF–022 without recommencing the site selection study is arbitrary, capricious, and made on bad faith, all in violation of the plaintiffs' rights to equal protection of the laws and to substantive due process as guaranteed by the Fourteenth Amendment.

Additionally, the plaintiffs allege that the condemnation of their property at site LF–022 and the expenditure of federal funds by the defendants for planning purposes, such as the selection and evaluation of the Oak Creek site, before it is determined whether the proposed amendment to the Solids Management Facility Plan will require a supplementary EIS constitutes a violation of NEPA. As a pendant state claim, the plaintiffs assert that the condemnation of their property before a determination of feasibility by the DNR violates Wis.Stat. § 144.447.

For the reasons set forth below, I shall deny the plaintiffs' request for entry of a preliminary injunction because they have not demonstrated a reasonable likelihood of success on the merits.[1] In reaching this conclusion, I furthermore shall grant the defendants' motion to dismiss the plaintiffs' Section 1983 claim for lack of subject matter jurisdiction and the plaintiffs' NEPA cause of action for failure to state a claim.

## II. CONCLUSIONS OF LAW

### A. *Constitutional Claims*

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To state a claim under that statute, the plaintiffs must allege, first, that some person has

---

**1.** A reasonable likelihood of success on the merits is one of the four well-recognized requirements for issuance of a preliminary injunction. *See Syntex Ophthalmics, Inc. v. Tsuetaki,* 701 F.2d 677, 681 (7th Cir.1983). Because the plaintiffs' failure to meet this test of the merits is sufficient in itself to preclude injunctive relief, a discussion of the other requirements is unnecessary here.

deprived them of a federal right, and, second, that the person who has deprived them of that right acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

■ The crux of this case is whether the plaintiffs will be deprived of a federal right "secured by the Constitution and laws" if the allegations of the complaint are taken as true. The plaintiffs allege that their constitutional rights to due process and equal protection of the laws will be abridged if the condemnation of their property is allowed to proceed without a reevaluation of the landfill site selection on the basis of the amended Solids Management Facility Plan. The mere recitation of constitutional provisions, however, is insufficient to state a claim under the Civil Rights Act. The plaintiff in a Section 1983 action is "required to set forth specific illegal misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance." *Duncan v. Nelson,* 466 F.2d 939, 943 (7th Cir.1972), *cert. denied,* 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972).

The plaintiffs do not challenge the constitutionality of Wisconsin's statutory condemnation procedures, Wis.Stat. § 32.05. Likewise, they do not contend that the actions taken by the defendants are without legislative authorization under those condemnation procedures. Indeed, the Wisconsin legislature has granted the Sewerage District the power to acquire property by condemnation and has delegated the duty of establishing the necessity for any such condemnation to the members of the Sewerage Commission. Wis.Stat. §§ 66.-90(1), (3).

Rather, the plaintiffs allege that the defendants' decision to initiate condemnation proceedings, in substance, was arbitrary, capricious, and made in bad faith, in violation of the Fourteenth Amendment. More specifically, the act of which the plaintiffs complain on constitutional grounds is the vote of the Sewerage Commission resolving to acquire site LF–022 in Oak Creek and to begin condemnation, an act undertaken intentionally and with knowledge that material facts underlying the selection of that site had changed substantially.

It must be observed at the outset that the particular facts of this action appear to present a case of first impression. Neither the parties nor the Court could find an instance in which any judge had enjoined state or local condemnation proceedings under 42 U.S.C. § 1983. The vast bulk of case law cited to the Court is land use litigation. The cases are condemnation proceedings brought either by the federal government or by landowners. In those cases, the landowners assert as a defense to an exercise of eminent domain by the federal government that the attempted taking was not for a congressionally authorized public use. *See, e.g., United States v. 416.81 Acres of Land,* 514 F.2d 627 (7th Cir.1975); *United States v. 58.16 Acres of Land,* 478 F.2d 1055 (7th Cir.1973).

Since 1960, plaintiffs have begun to turn increasingly to the federal forum for a resolution of such land use disputes. Because of the essentially local character of these disputes, their potential for resolution on nonconstitutional grounds, and their potentially crushing effect on judicial calendars, federal courts harbor an instinctive aversion to making federal cases out of condemnation proceedings. This Court, for one, is wary of becoming a zoning appeals board through its exercise of primary and pendant jurisdiction. *See generally* Ryckman, *Land Use Litigation, Federal Jurisdiction, and the Abstention Doctrines,* 69 Calif.L.Rev. 377, 377–81 (1981).

■ The instant litigation presents an additional problem because the action is framed in the pleadings as more of a civil rights case than a condemnation case. That is to say, the action does not call for the construction of a state condemnation statute or for a resolution of other complex state law questions. If this were true, or if the plaintiffs had initiated a pending state challenge to the attempted condemnation,

then this Court might well be justified in abstaining from a decision of the merits in this case. *See Ahrensfeld v. Stephens,* 528 F.2d 193 (7th Cir.1975) (Section 1983 action to enjoin state condemnation proceedings that would permit a taking for private and not public purpose; action dismissed as inappropriate in an eminent domain controversy when there is ongoing litigation in state court that could dispose of the constitutional claims). *See also Kent Island Joint Venture v. Smith,* 452 F.Supp. 455, 461 (D.Md.1978) (Section 1983 action to enjoin local zoning regulation as arbitrary and unreasonable exercise of police power).

Nevertheless, although framed in constitutional language, the complaint herein seeks federal court involvement in the substance of local land use decisionmaking. Section 1983 was never intended as a vehicle for federal supervision of land use policy. "Acceptance of the propositions that federal courts have a special role to play in the civil rights area, and that land use cases are sometimes civil rights cases, does not compel the conclusion that any land use controversy that can be cast in civil rights terms is entitled to vindication in a federal forum." *Ryckman, supra,* at p. 380. *See also Brown v. Brienen,* 722 F.2d 360 at 362–364 (7th Cir.1983) (breach of contract as deprivation of property without due process of law). Quite the contrary, federal courts have no business meddling in state condemnation proceedings under Section 1983 in the absence of some compelling evidence of a genuine civil rights violation. Any procedural or substantive "process" that the plaintiffs may be "due" in this case is amply afforded by the statutory condemnation procedure found in state law. Thus, this Court resists the plaintiffs' effort to make a federal case out of what, in truth, is a local land use concern.

The plaintiffs' constitutional claims for relief under 42 U.S.C. § 1983 are dismissed for want of subject matter jurisdiction. Under the facts of this case, Section 1983 does not empower a federal court to enjoin a state from initiating statutory condemnation proceedings.

**B.  *Statutory Claim***

In addition to their constitutional claims under Section 1983, the plaintiffs allege that the condemnation of the Oak Creek site will deprive them of a federal right secured by statute, namely, the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.* Enacted in 1969, NEPA contains a general charge to federal agencies to use "all practicable means, consistent with other essential considerations of national policy," to ensure that their actions conform with a policy of restoring and maintaining environmental quality. 42 U.S.C. § 4331. To carry out this charge, federal agencies are directed to prepare an environmental impact statement on every "major Federal action." This statement shall contain information on

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(C).

The primary purpose of Congress in enacting NEPA was to protect the national environment. It represents an attempt by Congress to force all federal decisionmakers to consider the environmental effects of any major federal action which they are contemplating. "Obedience to NEPA is a matter of the administrative agency requiring and digesting useful information about the environmental ramifications of major federal projects." *North Slope Borough v. Andrus,* 642 F.2d 589, 599 (D.C.Cir.1980). *See Hovsons, Inc. v. Secretary of Interior,* 519 F.Supp. 434, 442 (D.N.J.1981); *Mountainbrook Homeowners Ass'n, Inc. v. Adams,* 492 F.Supp. 521, 528 (W.D.N.C.1979).

The contents of the EIS are designed to ensure that the agency take a "hard look" at the environmental consequences of its actions. *See Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976); *South Louisiana Environmental Council, Inc. v. Sand,* 629 F.2d 1005, 1010–11 (5th Cir. 1980).

The plaintiffs argue that to allow condemnation of site LF–022 to proceed and to permit any further steps toward acquisition of that site before the EIS process is completed would "frustrate the intent of NEPA" and violate its procedural safeguards. Specifically, this Court is asked to enjoin further activities relating to the acquisition and testing of the Oak Creek site pending completion of the EIS on the SSA and the supplementary EIS which the DNR and the EPA may require of the proposed amendment to the Solids Management Facility Plan.

The gist of the plaintiffs' argument is that NEPA requires a consideration of the environmental effects of a project before that project is commenced; thus, the Act perforce requires that an EIS be completed soon enough to allow a consideration of a "proposed project" rather than a fait accompli. The plaintiffs fear that if the Sewerage District continues to make expenditures for the acquisition of site LF–022, then it will be presented with a fait accompli when it finally decides whether to begin construction of a landfill facility at the Oak Creek location. The condemnation and site acquisition activities will place so much momentum behind the selection of site LF–022 that a full and fair consideration of environmental consequences will be impossible. The Court finds this statutory claim, like its constitutional counterpart, without legal merit.

■ NEPA's requirements are strictly procedural. They create no substantive entitlements. Rather, they ensure solicitude for the environment through informed decisionmaking. Before an agency may proceed with the substantive implementation of any major federal action, it must satisfy certain procedural requirements. The role of the federal courts is limited to making sure that these procedures are satisfied and that the agency has considered the environmental consequences of its decision. Once the agency has made its "fully informed" and "well-considered" decision, the Court may not interfere with the agency's discretion in choosing the action to be taken. *Strycker's Bay Neighborhood Council v. Karlen,* 444 U.S. 223, 227–28, 100 S.Ct. 497, 499–500, 62 L.Ed.2d 433 (1980); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978).

■ Although NEPA fails to authorize either a public or private civil remedy, federal courts have fashioned remedies in civil actions to enforce an agency's procedural duties. Thus, courts have entertained actions to determine whether an agency proposed "major Federal actions significantly affecting the quality of the human environment" so that an EIS is required, or whether an EIS submitted by the agency is adequate under NEPA. In the instant case, the EPA has determined that the Sewerage District's site selection process—the SSA—requires the preparation of an EIS before any federal design or construction grants for a solid waste disposal site will be awarded. Similarly, the EPA and DNR subsequently will determine whether the proposed changes in the Solids Management Facility Plan constitute a major federal action requiring a supplementary EIS.

The plaintiffs do not challenge the adequacy of an existing EIS. Moreover, they do not allege that the EPA or DNR are exercising bad faith, that they intend not to carry out their duties, or that they have failed to carry out their duties in the past. At issue here is whether NEPA imposes, as one of its procedural requirements, that the Sewerage District refrain from committing resources toward the acquisition of a proposed landfill site until the environmental consequences of placing a landfill facility there are presented and considered in a statutory EIS. For the following reasons,

the Court holds that NEPA imposes no such requirement in the circumstances of this case.

■ As the defendants aptly observe, NEPA creates procedural requirements for federal agencies before they undertake major federal actions. This Court has the power to enjoin non-federal actors pending the observance of NEPA's procedural duty to prepare an EIS only if a "partnership" with the federal government can be shown. The use of federal funds typically is sufficient to establish such a relationship. *See Edwards v. First Bank of Dundee*, 534 F.2d 1242, 1244–46 (7th Cir.1976); *Bradford Township v. Illinois State Toll Highway Authority*, 463 F.2d 537, 539–40 (7th Cir.1972).

The plaintiffs admit that the EPA and DNR intend to complete an EIS on the Sewerage District's Site Specific Analysis before design and construction grants are awarded for the solids management facilities planned by the defendants. The plaintiffs further agree that the defendants do not have a federal grant for acquisition of a landfill site. At oral argument, the defendants stated that they may seek federal funding for landfill construction and for reimbursement of site acquisition expenditures only after the EIS process is completed.

On the other hand, the amended complaint alleges in paragraph 27, and the defendants admit, that federal grant funds have been received for the purposes of site planning; that is, site selection and site evaluation rather than site acquisition. In their written argument to the Court, the plaintiffs also assert that the defendants may be enjoined because their "programs" in general receive substantial federal funding. This assertion is somewhat vague, but for the purposes of the instant motion, I will assume it is true.

■ The plaintiffs' cause of action under NEPA nevertheless fails to state a claim for two reasons. First, it requires the

Court to interject itself impermissibly into an area of administrative discretion. In *Vermont Yankee*, the Supreme Court admonished federal courts not to introduce additional procedural or substantive standards of review into the provisions of NEPA. This Court's only role is to ensure that the environmental consequences are considered before a landfill is constructed on a proposed site; it may not pass upon the merits or wisdom of the ultimate decision. The administrative balance of environmental and economic factors is entitled to judicial deference so long as the agency has digested the useful information NEPA requires about the environmental ramifications of the proposed action.

The plaintiffs in this matter do not appear to be arguing that the required environmental impact statements will not be prepared, or that those statements will be inadequate under NEPA. Rather, they contend that further steps toward acquisition of site LF–022 will bring about an irretrievable commitment of resources; these acquisition expenditures will effectively preclude the EPA from giving meaningful weight to the environmental consequences of the Sewerage District's proposed use of the Oak Creek site. This is the sort of judicial inquiry that *Vermont Yankee* forbids. If the EPA and DNR prepare the required impact statements and those statements contain the information mandated by NEPA,[2] then this Court may not interject its own substantive standard to ensure that the final agency decision is a wise one.

Second, the plaintiffs attempt to characterize the issue presented here as involving the timing of the EIS rather than the relative weight given to environmental factors. They urge that an EIS must be completed before a proposed federal action is "commenced" and that the defendants must not be allowed to condemn the Oak Creek site until an EIS is prepared on the Site Selection Analysis and on the proposed amend-

**2.** Nothing in the record at this stage of the proceeding warrants this Court in presuming

that the EPA and DNR will not fulfill their duty to prepare an adequate EIS.

ment to the Solids Management Facility Plan.

The plaintiffs rely on cases in which actual construction of a proposed project was begun. The site acquisition expenses involved here are a far cry from those incurred in the construction of a proposed facility. It is the landfill itself, not the land acquisition, that causes the major environmental impact, and when a proposed action is rejected, expenditures on land are not wasted in the sense that construction expenses are wasted. In any event, no landfill construction will be commenced in this case until after the EIS process is completed. The Court holds as a matter of law that NEPA does not require preparation of an EIS on the District's SSA before specific site acquisition activities are undertaken. To require an environmental assessment at an earlier point in these circumstances would amount to undue judicial involvement and would require the preparation of unnecessary impact statements.

In sum, the complaint, construed liberally to resolve all doubts in the plaintiffs' favor, must be dismissed. The Court lacks subject matter jurisdiction under 42 U.S.C. § 1983 to enjoin the state condemnation proceedings in this case. Moreover, the allegations, taken as true, do not state a claim for relief under NEPA upon which relief may be granted.

Additionally, the plaintiffs have pleaded a pendent state claim for violation of Wis. Stat. § 144.447. This third claim for relief recites that the condemnation of site LF–022 prior to a determination of feasibility by the DNR constitutes a violation of that state provision. Subject matter jurisdiction over this claim is dependent upon the discretion of the Court in exercising its power of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the plaintiffs' federal claims herein have been dismissed, the Court declines to exercise its pendent jurisdiction over any remaining state law causes of action.

IT IS THEREFORE ORDERED that the plaintiffs' motion for preliminary injunction is denied.

IT IS FURTHER ORDERED that this action be and it hereby is dismissed.