**ROSENTHAL & ROSENTHAL INC.
and Broadway 41st Street Realty
Corporation, Plaintiffs,**

**v.**

**The NEW YORK STATE URBAN DEVELOPMENT CORPORATION; the Times Square Redevelopment Corporation; William J. Stern as Chairman and President of both the Urban Development Corporation and the Times Square Redevelopment Corporation; Mario M. Cuomo as Governor of the State of New York; the City of New York; Edward I. Koch as Mayor of the City of New York; Park Tower Realty Corporation; and George E. Klein, Defendants.**

**No. 84 Civ. 7229 (CBM).**

United States District Court,
S.D. New York.

Jan. 8, 1985.

LeBoeuf Lamb Leiby & MacRae by Jacob Friedlander, New York City, Norman Dorsen, New York City, for plaintiffs.

Leahey & Johnson, P.C. by Peter James Johnson, New York City, for defendants N.Y.S. Urban Development Corp., Times Square Redevelopment Corp., and Stern.

Robert Abrams, Atty. Gen. of the State of N.Y. by Barrie L. Goldstein, Asst. Atty. Gen., New York City, for defendant Cuomo.

Frederick A. O. Schwartz, Jr., Corp. Counsel by Gary Schuller, New York City, for defendants Koch and City of New York.

Shea & Gould by Dean G. Yuzek, New York City, for defendants Park Tower and Klein.

## OPINION

MOTLEY, Chief Judge.

Plaintiffs, owner and lessee of an office building located on the corner of 41st Street and Broadway in Manhattan, sue to enjoin condemnation of their building to

make way for the proposed Forty-Second Street Development Project. Plaintiffs allege that the proposed taking of their building is neither for nor rationally related to a public purpose, and therefore amounts to an unconstitutional taking in violation of the fifth and fourteenth amendments. Plaintiffs bring their claim pursuant to 42 U.S.C. section 1983. All defendants have moved to dismiss on essentially three different theories: 1) failure to state a claim on which relief may be granted, 2) the doctrines of ripeness, abstention, and comity, and 3) improper joinder of parties. The court halted all discovery in this action pending resolution of the motions to dismiss, and ordered that these motions be addressed solely to the face of the complaint. Therefore, since plaintiffs have had no opportunity to develop the factual basis of their complaint, the court has taken no notice of the factual affidavits submitted by defendants in support of these motions. For the reasons set forth below, however, defendants' motion to dismiss is granted.

FACTS:

This case is one of several to arise out of the large scale joint effort by the City and State to redevelop the Times Square area. For purposes of these motions, the factual background contained in the complaint will suffice.

On or about June 27, 1980, defendants Urban Development Corporation (UDC) and the City entered into a Memorandum of Understanding providing that the City and UDC would jointly prepare a plan and designate a developer to redevelop the Times Square vicinity, and that the UDC would have responsibility for implementation of the plan. In November, 1982, the UDC formed the Times Square Redevelopment Corporation (TSRC) as its subsidiary with primary responsibility for the development of Times Square.

Pursuant to the Memorandum of Understanding, the City and the TSRC have formulated the Forty-Second Street Development Project. The UDC has stated that the goals of the Project are "to eliminate blight on 42nd Street between Broadway and Eighth Avenue, to revitalize this vital crossroad and integrate it into the theatrical, cultural and commercial life of the city." Complaint paragraph 16.

The Project consists of several elements: Renovation of nine theaters on 42nd Street, subway station improvements, a new hotel, a large wholesale merchandise mart, and four new office towers ranging from 29 to 56 stories in height. One of the four towers, planned for the southern edge of the Project area, would be built partially on the site now occupied by the Rosenthal building. The site for the office towers will be assembled by the UDC through the use of the power of eminent domain. The actual construction of the buildings, however, will be undertaken by the designated private developer, defendant Park Tower Realty, of which defendant Klein is a principal. The buildings will be leased to Park Tower on a long-term basis and operated by Park Tower as private office buildings. In return, Park Tower will make contributions towards the subway and theater improvements.

Since the filing of the complaint in October, the City's Board of Estimate has approved the project and the UDC has published its findings in connection with the proposed condemnation, which could commence this spring. However, the condemnation may be delayed by the pendency of state and federal proceedings challenging the project.

Plaintiffs have owned and done business in their building for approximately 25 years. For the purposes of these motions, the court accepts as true plaintiffs' assertions that the building is structurally sound, attractively maintained, fully occupied, and in no way blighted. Plaintiffs maintain that since they do not contribute to the spread of blight, the condemnation of their building is not rationally related to the UDC's stated goal of combatting blight. Plaintiffs urge that the taking of their building therefore be declared unconstitutional on two different grounds: First, that the building is being condemned solely to make money for defendant Klein, which

is alleged to be a constitutionally illegitimate private purpose, and second, that the use of condemnation to raise funds for subway and theater renovations is an unconstitutional substitution for taxation.

Defendants urge this court to abstain from reaching the merits of plaintiffs' claims on the basis that the controversy is not yet ripe, and under the doctrines of abstention and comity. Defendants suggest that proceedings challenging the Project's blight findings under section 207 of the State's Eminent Domain Procedure Law should be allowed to proceed prior to any federal court intervention. In addition, all defendants except the UDC, the TSRC, and Stern argue that they are improperly joined since they either lack the power of condemnation or will not exercise it in this case; the injunctive relief sought therefore cannot be had against them. Finally, all defendants urge that the complaint be dismissed on its face under the well established doctrine that the courts will not second-guess the contours of a public redevelopment plan so long as a legitimate public purpose for the plan exists.

Plaintiffs argue in turn that the imminence of state condemnation proceedings makes this case ripe for decision, that the availability of a state forum does not require the federal court to abstain from reaching a claim pursuant to section 1983, and that in any event the available state forum is inadequate. Plaintiffs further argue that the close cooperation between all defendants in formulating and executing the Project makes appropriate their joinder as defendants here. Finally, plaintiffs urge that notwithstanding the long line of cases requiring judicial deference to state redevelopment plans, this case nevertheless requires the court to intervene to prevent a taking entirely for private gain, which has never been approved in prior cases.

DISCUSSION:

■ Defendants' procedural arguments can be disposed of summarily. Any doubt that objections to the condemnation of property for the Project presented a ripe controversy at the time of the filing of this complaint have been dispelled by the Project's approval by the Board of Estimate and the publication of the UDC's findings. Condemnation is imminent and so is plaintiffs' alleged loss. Moreover, assuming that plaintiffs have pleaded a substantial constitutional cause of action, this court sees no need to abstain in deference to possible state proceedings filed after the commencement of this action.

■ The argument of some defendants that they are not proper parties to this action gives the court more pause. However, while the relief sought here technically is only injunction of the condemnation of plaintiffs' building, this court believes that the concerted activity of all defendants in bringing about this project justifies their joinder here. See Archer Gardens, Ltd. v. Brooklyn Center Dev. Corp., 468 F.Supp. 609, 613 (S.D.N.Y.1979) (private developer acting in concert with state officials is proper party to section 1983 action challenging alleged taking). If plaintiffs state a valid cause of action, it may be possible for them to show that all defendants acted under color of state law to deprive them of their rights. If there is no valid cause of action, then the question is moot. The court proceeds, therefore, to the question of whether the complaint in this case states a claim upon which relief may be granted.

Defendants rely largely on the landmark case of Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), in which the Supreme Court established the now-familiar principle that courts will not second-guess the decisions of local government in land use and redevelopment. Berman held that the elimination of blight is a legitimate governmental goal and that condemnation and redevelopment are within the police powers of the state in attaining that goal. Id. at 33–34, 75 S.Ct. at 102–103. The Court rejected a property owner's claim that the taking was improper because his property was not blighted and because the property in question would be put into private hands. Since the government had legitimately found the area blighted, the Court would not sit in judgment over the

boundary lines of the project. *Id.* at 35–36, 75 S.Ct. at 103–104.

So well settled is the principle of deference to land use decisions that at least one federal court has held that it lacked even subject matter jurisdiction over an attempt to challenge a local sewage plan in the setting of a civil rights action. "Section 1983 was never intended as a vehicle for federal supervision of land use policy." *City of Oak Creek v. Milwaukee Metropolitan Sewerage District,* 576 F.Supp. 482, 487 (E.D.Wis.1983). Such a claim must be dismissed absent "compelling evidence of a genuine civil rights violation." *Id.*

The Supreme Court most recently reaffirmed the central themes of *Berman* in *Hawaii Housing Authority v. Midkiff,* ⸺ U.S. ⸺, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). In *Midkiff,* the Court upheld a state land reform procedure aimed at breaking up large land holdings in Hawaii, rejecting a claim that it amounted to an unconstitutional taking. The Court concluded that since the purpose of eliminating oligarchical control of land was a legitimate one, Hawaii could use a condemnation-like proceeding to put land ownership into more diverse hands.

> The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public.

*Id.,* ⸺ U.S. at ⸺, 104 S.Ct. at 2331, 81 L.Ed.2d at 199.

These fixed principles narrow our inquiry. Recognizing this, plaintiffs maintain that this case involves a purely private taking with no public purpose whatsoever, which the *Midkiff* court held would be unconstitutional and void. *Id.,* ⸺ U.S. at ⸺, 104 S.Ct. at 2331–2332, 81 L.Ed.2d at 200. Plaintiffs argue strenuously that there is a serious factual dispute as to the true nature of this project, and that their version requires us to distinguish this case from *Midkiff* and *Berman.*

Plaintiffs assert that the Forty-Second Street Project is a very different kind of project from that which has been approved before. The Project, they argue, is not a wholesale clearing of blighted areas and does not involve the upgrading of housing as in *Berman,* but is merely an attempt to use redevelopment to eliminate the *social* blight of drugs and crime in Times Square. Here, plaintiffs argue, since defendants have chosen not to level the whole neighborhood but selectively to demolish, restore, or leave alone each building within the project area, the decision of which buildings are to be demolished must not be arbitrary and capricious if the Project is to withstand the rational relationship test. This is not a case where a private landowner seeks to protect a small pocket of non-blight and holds up development of a blighted area. Rather, plaintiffs argue, the project is being enlarged to take in desirable, non-blighted property for the sole purpose of generating additional profit for Klein.

Plaintiffs assert that the Candler and Hotel Carter buildings, in much worse condition and more centrally located in the project area, will be left untouched for illegitimate reasons—the Candler building because its owner is said to be well-connected politically, and the Hotel Carter because the government allegedly seeks to avoid paying relocation costs to the welfare families who live there.

Plaintiffs also point out that a "white paper" prepared by the law firm of Cadwalader, Wickersham, and Taft for Milstein Properties, a rival developer, raises serious questions of improper political influence in the selection of Klein as developer. Plaintiffs allege that when Milstein was about to be chosen as developer of the merchandise mart that will be built as part of the Project, the City threatened to back out of the Project unless Klein, who is a supporter of Mayor Koch, were given half the job. Park Tower, plaintiffs assert, will earn about $650 million on the Project, while contributing only about five percent of that for subway and theater improvements.

All of the foregoing, say plaintiffs, establishes that this is primarily a private real estate development for Klein's profit, replacing one non-blighted office building with another, with marginal public benefit. To the extent that the developer contributes money for public amenities, plaintiffs argue that that is an improper use of eminent domain to raise money in lieu of taxation. Even if legitimate, the comparatively modest amount of money involved could be raised from two large office towers, instead of the four planned. The only reason for the additional two buildings, which necessitate the taking of plaintiffs' property, is to make more money for Klein. Plaintiffs insist that the complaint therefore states a cause of action under *Midkiff,* because this allegedly private taking is not rationally related to a public purpose.

In sum, plaintiffs argue that *Midkiff* and *Berman* provide for a narrow role for courts which is appropriate to exercise here: when a taking is planned solely for a private purpose, it must be held unconstitutional. If the taking of the Rosenthal building is permitted, they argue, New York real estate will be fundamentally changed, because politically connected developers will be able to assemble sites for development with the aid of eminent domain, freely condemning desirable property adjacent to arguably blighted areas.

 Plaintiffs are correct that *Midkiff* provides a narrow role for this court—a very narrow role indeed. Absent evidence that a proposed taking treads on a specific constitutional right, we are concerned only that a taking is rationally related to some legitimate public purpose. It is clear from the foregoing recitation that many of plaintiffs' assertions are far too broad to address this limited concern, and are clearly precluded by the settled law of *Berman* and *Midkiff.* It is too late in the day to assert that it makes any difference that this Project does not involve housing, that it will give property to private developers, that those developers will make a profit, that the boundary lines could have been drawn differently, that plaintiffs' property

is not blighted, or even that the Project is poorly designed to serve its goals. These matters are, for better or worse, squarely within the discretion of the political branches. Even if this court were to conclude that this Project is a mammoth boondoggle, socially and architecturally ill-advised, it would still be a question for the political process, not a federal court.

But plaintiffs here allege more: They allege that fighting blight is *not,* as a matter of fact, the motivation behind this Project. They assert that the actual *reason* for the project is to make money, specifically for a developer who is alleged to be a close supporter of the Mayor and other politicians. In other words, without disputing that the state basically may do what it likes so long as it intends to fight blight and might reasonably believe that this project would further the goal, plaintiffs assert that defendants here did *not* so believe or so intend. They were motivated instead simply by the desire to make money for Klein.

Defendants conceded at oral argument that if plaintiffs' allegations, in this extreme form, were literally true, then the complaint would state a cause of action. Defendants maintain, however, that the suggestion that no public purpose of any kind exists for the Forty-Second Street Project must be rejected on the face of the complaint. This court agrees. The complaint itself refers to the broad public purposes behind this Project: To eradicate blight in Times Square and to revitalize the area culturally and commercially. Defendants argue that this court can take judicial notice of the violent crime, drug traffic, and physical deterioration of the Times Square area, and plaintiffs do not appear to dispute the point. In fact, plaintiffs do not even *plead* that the Project lacks a public purpose. Instead, they limit their allegations to the purpose underlying the taking of the Rosenthal building. *See* Complaint paragraphs 21–23.

It is clear, then, that a substantial, legitimate public purpose underlies the Project, and that a large scale redevelopment plan

such as is described in the complaint is rationally related to serving that purpose. Plaintiffs would have us avoid this conclusion by permitting them to prove that the "true" motivation behind the project is private profit. Such an argument flies in the face of reality, even as portrayed in plaintiffs' own pleading. It is not enough that the Project planners were *partially* motivated by the desire to make money for private developers. Such mixed motivations seem politically inevitable and perhaps are necessary to the success of this kind of project. To constitute a purely private taking and thus fit within the narrow exception of *Midkiff*, plaintiffs must demonstrate that *no* public purpose exists for the Project. This they cannot do.

To the extent that plaintiffs can prove favoritism in the selection of one developer over another, there may be a violation of state law necessitating a new selection, but this does not go to plaintiffs' constitutional claim. In order to state a constitutional cause of action, plaintiffs would have to charge a level of corruption beyond that pleaded or reasonably inferred from the pleading here. Plaintiffs would have to be able to plead that the public purposes put forth for the plan were a sham and a fraud on the public, and that the project *existed* to profit defendant Klein—not merely that it was shaped in such a way as to make it more profitable for him. Since this would amount to a serious allegation of public fraud, it would have to be pleaded with specificity. Despite the complaint's conclusory allegation that the taking of the Rosenthal building is solely for Klein's benefit, the court does not understand the plaintiffs to allege that this kind of fraud is taking place. Once a legitimate public purpose for the overall project is conceded, however, the court cannot get involved in parsing the particular degree of public or private motivation behind the inclusion of a particular site in the Project area, so long as that inclusion could rationally be related to the public purpose of the plan as a whole.

■ Plaintiffs also argue that since *Midkiff* approved Hawaii's plan aimed at breaking up oligarchical land holdings, New York may not now use this Project to *concentrate* land ownership in the Times Square area in fewer hands. This argument, too, must be rejected. *Midkiff* does not represent Supreme Court endorsement of diversified rather than centralized land ownership. Rather, the case stands for the more general proposition that states have broad discretion to define public purposes and to formulate plans within the police power to address them. Nothing in the Constitution prevents a state from deciding that in a particular area diversity of land ownership stands in the way of full economic development, and that assembling a major site to be developed as a piece is the best way to serve the public purposes of eliminating blight, creating jobs, and broadening the tax base.

■ In evaluating plaintiffs' argument that the raising of money for subway and theater renovation through the condemnation of the Rosenthal building is a constitutionally illegitimate substitute for taxation, the court must again look at the overall goals of the project. It would be simplistic to view this fundraising mechanism in a vacuum, apart from the total development plan. Plaintiffs cite *Courtesy Sandwich Shop v. Port of New York Authority*, 12 N.Y.2d 379, 388, 240 N.Y.S.2d 1, 5, 190 N.E.2d 402, 406 (1963) for the proposition that a condemnation solely undertaken to produce revenue, with no other primary purpose, would be unconstitutional. In that case, however, the New York Court of Appeals found acceptable the use of portions of the World Trade Center development to produce incidental revenue for other parts of the port development project. Such incidental fundraising "does not vitiate the public purpose of the development as a whole." *Id.* at 390, 240 N.Y.S.2d at 7, 190 N.E.2d at 408.

Similarly, it is perfectly legitimate that portions of the Forty-Second Street Project will help generate funds to support other aspects of the Project. The court rejects

the suggestion that since these office towers replace other office buildings their only possible purpose is to raise a few million dollars for subway and theater improvements. These buildings are a major part of the overall redevelopment scheme, and it would be quite reasonable for the project planners to conclude that this kind of large scale redevelopment, bringing thousands of new people into the neighborhood and radically changing the physical configuration of the area, would further the Project's overall goals of eliminating blight and revitalizing Times Square.

Plaintiffs insist that if this taking is permitted the worst excesses of the New York real estate industry will flourish unchecked, with choice properties plucked at random from their rightful owners through eminent domain and turned over to politically-connected developers. If the Forty-Second Street Project is permitted to reach down to Forty-First Street to encompass a non-blighted office building, ask plaintiffs, what is to stop the state from condemning Herald Square or Gramercy Park for redevelopment, with the profits to support subway improvements and theater renovations?

The short answer is that the political process will stop it. Within very broad constitutional parameters monitored by the courts, our system leaves such land use questions to the elected representatives of the people. It is through political give and take in the legislative and executive branches that some areas are landmarked, others designated for redevelopment, still others left to the free market. This process does not always result in plans that are wise, tasteful, or even fair. The court is confident, however, that the political process will not permit defendant Klein or anybody else to turn Central Park into condominium apartments.

The federal courts remain available for challenges to truly private or truly irrational takings, as the Supreme Court acknowledged in *Midkiff.* We do not face such a situation here, and need not dwell on hypotheticals. The Forty-Second Street Project has emerged from the political process as a comprehensive attempt to address the implacable problems of crime and decay in Times Square. It addresses legitimate public purposes in a reasonable way, and the inclusion of the Rosenthal building, less than a block from the core area of blight, is certainly not irrational. Absent a particularized pleading of public fraud, or evidence of some other specific constitutional violation, that is enough to pass the scrutiny of this court.

For the foregoing reasons, the court holds that plaintiffs fail to state a cause of action on which relief may be granted. Defendants' motion to dismiss is granted.