**UNITED STATES of America, Plaintiff,**

v.

**METROPOLITAN DISTRICT COMMISSION, et al., Defendants.**

**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., Plaintiff,**

v.

**METROPOLITAN DISTRICT COMMISSION, et al., Defendants.**

**Civ. A. Nos. 85–0489–MA, 83–1614–MA.**

United States District Court, D. Massachusetts.

Jan. 7, 1991.

Andrew S. Hogeland, Asst. U.S. Atty., Karen F. Green, Sp. Asst. Atty., Hale & Dorr, Boston, Mass., Joseph J. McGovern, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington D.C., for plaintiff.

Anne Crocker Phillips, Ropes & Gray, Boston, Mass., for compliance Monitor.

E. Michael Sloman, Asst. Atty. Gen., Boston, Mass., for State defendants.

Laura Steinberg, Sullivan & Worcester, Boston, Mass., for Boston Water & Sewer Authority.

John Stevens, Foley, Hoag & Eliot, Boston, Mass., for Mass. Water Resources Authority.

Bradford S. Gentry, Samuel Hoar, Jeffrey C. Bates, Goodwin, Proctor & Hoar, Boston, Mass., for Conservation Law Foundation of New England.

Catherine L. Farrell, Gen. Counsel, M.W. R.A., Boston, Mass., for MWRA.

Murphy, DeMarco & O'Neill, Boston, Mass., for City of Quincy.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter is before me on the joint motion of The Town of Norfolk, Massachusetts and the Town of Walpole, Massachusetts (the "Towns") to intervene for a limited purpose in this action. The Towns seek to intervene as of right pursuant to Rule 24(a) Fed.R.Civ.P. or, alternatively, pursuant to Rule 24(b). The Massachusetts Water Resources Authority (the "MWRA") has filed an opposition to the motion, as has the United States.

I. *History.*

A brief summary of this case to date is helpful in understanding the context in which the motion has been filed. In June, 1983, the Conservation Law Foundation ("CLF") filed suit in this Court against the Metropolitan District Commission (the "MDC") and the United States Environmental Protection Agency ("EPA"). CLF's suit sought remedies for violations of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 *et seq.* (the "Act") resulting from massive, ongoing discharges of sewage into Boston Harbor by the state agency responsible for wastewater treatment in the Greater Boston area. In January, 1985, a similar suit was filed by the United States, and the cases were consolidated. In the spring and summer of 1985, the Town of Winthrop and the City of Quincy moved for and were allowed to intervene in the case. In September, 1985, this Court found the MDC and its successor agency, the MWRA, to be in violation of the Act, the permits issued to the MDC and the MWRA under the Act, and a 1980 administrative compliance order issued by the EPA.

Following the entry of the order determining liability for violations of the Act, an elaborate construction schedule and reporting process were imposed as part of this Court's remedial order. The construction effort entails the construction of a $6 billion new sewage treatment system for the Metropolitan Boston area. The remedial order requires the MWRA to file monthly compliance reports. Sixty compliance reports have been filed and corresponding compliance orders based on those reports have been entered by this Court since November, 1985. The monthly compliance orders are supplemented from time to time with specific orders designed to elaborate on particular scheduling requirements.

The overall construction project may be summarized as follows. Sewage flows from the MWRA's member communities will continue to be processed at Deer Island in Winthrop, where a new primary and secondary sewage treatment plant will be built. Treated liquid effluent will be pumped from Deer Island out approximately nine miles by underwater tunnel to a point in Massachusetts Bay. The solid portion of the sewage will be separated into two primary components: grit and screenings, and sludge. The sludge will be piped by underwater tunnel from Deer Island to the Fore River Staging Facility in Quincy, where the MWRA is constructing a residuals management facility. At this facility, the sludge will be converted into pelletized form. The MWRA's residuals management plan calls for market distribution of the pellets as commercial fertilizer. The grit and screenings will be transferred to a landfill. In the event the MWRA is unable to market or otherwise legally dispose of the pelletized sludge, the sludge will be deposited in the landfill as well. It is the proposed siting in Walpole of this residuals landfill that has led to the pending motion.

The MWRA's proposed residuals management program was required to undergo environmental review at both the state and federal level. A site in Walpole near the Town of Norfolk was identified by the MWRA in 1987 as a potential site, and the Towns participated in the state environmental review process regarding this matter. *See* Complaint in Intervention at ¶¶ 9–10. On January 17, 1989, the MWRA filed with the Court its compliance report for the December, 1988 period, which included a

report that the MWRA's Board of Directors had determined that the Walpole site was the preferred site. On November 20, 1989, the Massachusetts Secretary of the Executive Office of Environmental Affairs issued a certificate accepting the MWRA's final Environmental Impact Report on the long-term residuals management plan, which included designation of the Walpole site as the preferred residuals landfill.

On January 8, 1990, the Town of Norfolk filed an action in the state court challenging the state environmental review process resulting in the selection of the Walpole site, and on January 10, 1990, the Town of Walpole filed a similar case. These cases have been joined and transferred to Suffolk Superior Court.

On March 30, 1990, EPA issued its record of decision accepting the MWRA's final Environmental Impact Statement including the selection of the Walpole site. On April 30, 1990 and May 14, 1990, respectively, the Towns of Norfolk and Walpole filed suit in this court challenging EPA's review of the siting decision.

In May, 1989, I issued a long-term scheduling order, which included a requirement that a schedule be developed for construction of the long-term residuals management facilities. On October 31, 1990, I issued a long-term residuals management scheduling order requiring completion of design of the landfill by November, 1991 and commencement of construction no later than September, 1992.

The Walpole site is currently owned by the Massachusetts Department of Corrections. Extensive delays have plagued the MWRA's longstanding effort to obtain legislative approval to obtain title to the site. Those efforts culminated recently in a vote by the Massachusetts House of Representatives denying a bill that would have authorized the land transfer. Prompted by this and similar delays, the United States has filed two alternative motions seeking both an order requiring the Commonwealth to transfer the land and the imposition of sanctions. The Towns expressly seek to participate in the resolution of these motions.

II. *Position of the Parties.*

The Towns claim a right to intervene in this case pursuant to Rule 24(a) for the limited purpose of commenting on any proposed scheduling orders that would "force the MWRA to acquire, develop and/or use" the Walpole site for the landfill and thus "unjustly foreclose the Town's possibility of succeeding in the underlying environmental litigation." The Towns suggest that any scheduling orders referring to the landfill may fuel a "bureaucratic steamroller" that will effectively prejudge the underlying litigation. The Towns further argue that neither the MWRA or the EPA will represent the Towns' interest in the underlying litigation. The Towns also claim that their interests relate not only to the preservation of the groundwater resources threatened by the proposed landfill but also to the "integrity of the state and federal processes established to review the decision of EPA and MWRA to site the landfill in Walpole."

Alternatively, the Towns argue that they should be permitted to intervene under Rule 24(b), because the underlying state and federal cases have a question of fact in common with the current case, namely, the suitability of the Walpole site for the proposed landfill and the advisability of ordering any transfer of the land. The Towns claim that their participation will not interfere with the time frames previously established by the Court.

The United States has filed an opposition to the motion to intervene. The United States claims that the Towns are not entitled to intervene as of right under Rule 24(a) because the motion is untimely and because the Towns have not shown a legally protectable interest sufficient to entitle them to intervention. The United States also argues that it would be prejudicial to the parties to change the schedule previously negotiated by the parties and entered by the Court. The United States claims that acquisition of the Walpole site and limited geotechnical testing will not result

in irreparable harm to the Towns and that the availability of judicial review under state environmental law should give the Towns an adequate forum in which to assert such a claim. The United States also argues that the magnitude and importance of the case militates against intervention.

The United States suggests that permissive intervention under Rule 24(b) should be denied because there is no question of law or fact in common between the current case and the underlying state and federal litigation. The United States suggests that the Towns' request to be heard on the motion concerning transfer of the Walpole site can be accommodated by allowing the Towns to participate on an *amicus* basis.

The MWRA has filed an opposition to the motion to intervene, arguing that the Towns do not meet the legal requirements for intervention as of right or permissive-intervention and that the motion is not timely. The MWRA argues that the Towns indicated an intent to intervene almost two years ago and that intervention after such a long delay would cause prejudice to the public interest and the existing parties. The MWRA adopts the argument of the United States that the Towns' only legally cognizable interest is under the Massachusetts Environmental Policy Act and the National Environmental Policy Act and that land acquisition is an occurrence with no environmental relevance under those statutes. The MWRA indicates that it does not object to participation by the Towns in an *amicus curiae* role in connection with the pending motions of the United States concerning transfer of the Walpole site.

III. *Discussion.*

■ I turn first to the Towns' claim that they are entitled to intervene as of right pursuant to Rule 24(a), because they have an interest relating to the property or transaction which is the subject of the action and that may be adversely affected by the action. The standard for determining whether an interest is sufficient to justify intervention is whether the Towns have a direct, substantial, and legally protectable interest in the proceedings. *See Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 638 (1st Cir.1989). While the Towns clearly have a direct and substantial interest in seeing that any landfill that may affect their water supply receives adequate environmental review, it is less clear that this interest is directly implicated by the current action.[1] This case involves an effort to remedy the decades old problem of ongoing pollution of Boston Harbor. Complaints about the environmental review process for a siting decision for one element of the residuals management plan that is merely a part of the overall construction program for this remedial effort are, at best, indirectly related to this case.

Further, while the Towns' interest in the state and federal environmental review process may be legitimate, as the United States points out, their interest is at best a contingent one, as there has been no showing of likelihood of success on the merits, let alone any actual showing of success on the merits of the underlying claims. Case law is clear that an interest contingent on a favorable result in an associated law suit is insufficient to support intervention under Rule 24(a). *Travelers Indemnity Co. v. Dingwell,* 884 F.2d at 638.

What the Towns claim they are trying to prevent is "precipitous" action by this Court that would render any victory in the underlying litigation worthless, because the "bureaucratic steamroller" set in motion by scheduling orders in this case would preclude full or fair consideration of their concerns in the underlying litigation. There are two practical problems with this argument. The first is that acquisition of the site and minor testing simply will not prejudice the underlying claims. Should the Towns be successful in the underlying litigation, the responsible state or federal agency would presumably require further environmental studies or appropriate remedial measures, or, conceivably, would pro-

1. I have assumed, without deciding, that in fact the proposed landfill could affect the Towns' water supply.

hibit use of the Walpole site. The fact that the MWRA has acquired and tested that site should not have any effect on the environmental review process. Second, the MWRA has indicated that it will not be conducting any further testing on the site until after the winter season, by which time the underlying litigation may have been decided.

■ Even if the Towns have no right to intervene pursuant to Rule 24(a), a question remains whether they should be permitted to intervene pursuant to Rule 24(b). The standard for permissive intervention is that a statute must confer a conditional right to intervene or an applicant's claim and the main action must have a question of law or fact in common. The Court in exercising its discretion on such a motion must consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." The Towns have not cited any statute granting a conditional right to intervene, and I therefore treat the motion as one made pursuant to Rule 24(b)(2).

As noted above, it is clear that the current action is brought under the Act, and the complaint made by the Towns concerning the siting process is grounded primarily under the Massachusetts Environmental Policy Act and the National Environmental Policy Act. There simply are no common questions of law. Thus, the issue becomes whether this case and the underlying cases share any common questions of fact. I find that they do not, because the substantive decisions concerning the siting of particular components of the remedial plan are not before this Court and have been left consistently throughout this litigation to the discretion of the MWRA and the appropriate regulatory agencies. I did not select or participate in the selection of the Walpole site or for that matter, the site for any other component of the remedial plan. My views on the location of the landfill are not relevant. My overriding concern is that a landfill be located *somewhere* within a reasonable period of time. Where this will be and how the siting process has been con-

ducted are beyond the scope of the present motions.

### IV. *Timeliness.*

■ There is an additional basis on which I find that the motion to intervene should be denied. Specifically, I find that the motion is untimely based on the four part analysis identified in *Culbreath v. Dukakis*, 630 F.2d 15, 21 (1st Cir.1980). These factors are first, the length of time the prospective intervenor knew or reasonably should have known of its interest before it petitioned to intervene; second, the prejudice to existing parties because of the delay in submitting the intervention petition; third, the prejudice that the putative intervenor would suffer if the petition were denied; and fourth, the existence of any unusual circumstances that militate either in support of or against intervention. The application of these factors to an earlier effort to intervene in this case was discussed at length in my prior *Memorandum and Order* dated February 8, 1988, and affirmed at 865 F.2d 2 (1989).

The most important of the four tests set forth in *Culbreath* is clearly the first, namely the length of time the prospective intervenor knew or reasonably should have known of its interest before it petitioned to intervene. The Towns state in their Complaint in Intervention that they were aware in 1987 that the Walpole site was being considered as a landfill site. Complaint in Intervention at ¶ 9. The Walpole site was identified as the preferred site no later than January, 1989, and the Towns apparently considered and discussed with counsel for the MWRA an effort to intervene in January, 1989. *See* Exhibit A to Opposition of the Massachusetts Water Resources Authority to Motion of the Towns of Norfolk and Walpole to Intervene for a Limited Purpose. Thus, it is clear that the Towns have known for at least three years that the Walpole site was a possible location and have known with certainty for almost two years that the Walpole site was the MWRA's preferred location. The Towns were also aware that the MWRA would be committing capital funds to design and develop the site and that the parties were

ordered to develop a proposed long-term schedule incorporating development of a landfill. I agree with the argument of both the MWRA and the United States that would be intervenors may not sit idly by while litigation progresses, only to object when their collateral efforts to prevent a particular result prove unsatisfactory.

The second *Culbreath* factor requires consideration of the harm to the parties if the intervention is allowed. While the Towns claim that their participation would not interfere with time frames previously established, it is apparent that the Towns wish to modify the existing schedule to delay (or preferably delete) any milestones relating to the development of a landfill at any site until such time as their underlying legal challenges have been resolved. It is clear that such modification would materially and adversely affect the overall schedule, which has been negotiated at enormous effort by all the parties. The parties and this Court have spent hundreds of hours overseeing and implementing the complex schedule since the time it first become apparent that the Walpole site was the preferred site. I am frankly troubled by the fact that the Towns apparently considered intervening in this case as early as January, 1989, but elected not to do so in the face of express opposition by the MWRA. To permit the Towns to undo at this late date much of the progress that has been made in the last two years seems unjust. I also note that the MWRA has already commenced making significant capital commitments for landfill design based on the schedule, and thus the ratepayers' interests would be adversely affected as well.

The third *Culbreath* factor requires analysis of the prejudice, if any, to the prospective intervenor if the motion is denied. I find that denial of the motion will not prejudice the Towns' parallel state and federal proceedings, because acquisition of the site by the MWRA and preliminary testing of that site will not irrevocably commit the site to use by the MWRA. Land acquisition alone will cause no harm at all, and the cases cited by the Towns are inapposite. The decision in *City of Oak Creek v. Milwaukee Metropolitan Sewer District,* 576 F.Supp. 482 (E.D.Wis.1983) is particularly instructive. In that case, the court declined to enjoin acquisition of condemned land for use as a landfill for a sewage treatment plant, despite the absence of a final environmental impact statement. The court held "as a matter of law that MEPA does not require preparation of an EIS ... before specific site acquisition activities are undertaken." 576 F.Supp. at 490.

In connection with the claim that proposed testing of portions of the Walpole site will create irreparable harm, I have reviewed the affidavit of Susan J. Trull submitted as an attachment to the Towns' motion. The affidavit suggests that the proposed testing of the area will cause "disruption" to the existing characteristics of the site, including soil structure disruption, soil compaction, death of vegetation, erosion, and the possible death of slow moving animals in the excavation area. While this Court is especially sensitive to any claim of environmental degradation, the Towns should seek a restraining order in the underlying state or federal action to protect these interests if, in fact, the damage is irreparable and imminent. In view of the MWRA's decision to suspend testing until the spring, it would appear that there is no imminent threat in any event.

Finally, the fourth *Culbreath* factor permits a court to consider any unusual circumstances affecting the advisability of granting a motion to intervene. As I have previously observed, the magnitude of this case and the seriousness of the ongoing violations of the Act weigh heavily in favor of avoiding any intervention not essential to adjudication of the merits of this case and that might adversely affect the nature and course of the litigation.

On balance, and in view of the fact that the Towns have waited so long to raise their claims in this forum, I find that the motion should be denied. I am mindful, however, of the importance of the motions of the United States to the Towns and their citizens, and I believe as stated in my most recent Compliance Order that the fullest consideration of those motions is appropri-

ate. I will therefore review their memorandum in opposition to the motions of the United States and will permit them to participate in the hearing on the motions of the United States on an *amicus* basis.

For the reasons set forth above, the motion is denied.

SO ORDERED.